IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JACINDA GARDNER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GALARDI SOUTH ENTERPRISES CONSULTING, INC. d/b/a MASTERS GENTLEMEN'S CLUB,<br><br>Defendant. | Case No.<br><br><br><br>Complaint – Class/Collective Action<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Jacinda Gardner ("Plaintiff"), individually and on behalf of all similarly situated employees, brings this Class/Collective action lawsuit against Defendant Galardi South Enterprises Consulting, Inc., d/b/a Masters Gentlemen's Club ("Defendant"), seeking to recover for Defendant's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110, and common law. Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

**INTRODUCTION**

1.      As explained herein, under applicable federal and state employment laws, all employees are entitled to fair compensation, overtime compensation, and the retention of tips/gratuities received from customers, unless statutorily exempt. Because they are plainly "employees" under the applicable laws, Plaintiff and the class members should have been paid fair wages, given overtime compensation, and allowed to retain all tips/gratuities provided by customers. To avoid complying with these laws designed to protect employees from employer abuse, Defendant (as defined herein) improperly classified Plaintiff and other exotic entertainers ("Dancers") as "independent contractors." As a result of this improper classification, Defendant

1

(1) avoided paying Plaintiff and class members at least the applicable minimum wage; (2) regularly required Plaintiff and class members to work in excess of forty hours per week, and then failed to pay them premium overtime compensation; and (3) improperly collected a portion of the tips Plaintiff and other Dancers received from customers.  As set forth herein, such conduct is in violation of the applicable state and federal wage and hour laws.

2. Dancers, including Plaintiff and her current and former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners.  *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U.J. Gender Soc. Pol'y & L 465, 466 (1999).

3. Accordingly, adult entertainment clubs, such as those owned and operated by Defendant, are well-positioned to take advantage of Dancers and routinely deny them basic workplace rights.

4. Over the past two decades, the Department of Labor ("DOL") and courts across the country have recognized that Dancers are employees, *not* independent contractors, and, accordingly, are entitled to protection under various state and federal wage and hour laws.

5. Despite these significant strides, adult night clubs in South Carolina and across the country routinely deny Dancers the basic protections they are accorded under state and federal law.  Defendant is no exception.  As set forth herein, Defendant regularly deprives Dancers of their rights under federal law, as well as the laws of South Carolina.  Plaintiff brings this lawsuit to address these improper pay practices.

**SUMMARY OF CLAIMS**

6. Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA" or the "Act").

7. In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Dancers who have worked for Defendant at its "Masters Gentlemen's Club" Myrtle Beach location within the statutory period covered by this Complaint, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) ("FLSA Collective Class").

8. In addition, Plaintiff also brings this action as a state law class action to recover unpaid wages, including inappropriately withheld tips, pursuant to the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110 (the "PWA"), and common law (the "SC State Laws").

9. Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Dancers who have worked for Defendant at its "Masters Gentlemen's Club" Myrtle Beach location during the statutory period covered by this Complaint ("State Law Class").

10. Plaintiff alleges on behalf of the FLSA Collective Class that they are: (i) entitled to unpaid minimum wages from Defendant for hours worked for which Defendant failed to pay the mandatory minimum wage, as required by law; (ii) entitled to unpaid overtime wages for all hours worked in excess of forty in a work week; and (iii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

11. Plaintiff alleges on behalf of the State Law Class that Defendant violated the SC State Laws by, *inter alia*: (i) failing to pay them the appropriate minimum wages for all hours worked; (ii) improperly denying them overtime wages for all hours worked in excess of forty hours in a work week; and (iii) inappropriately withholding and/or deducting unlawful amounts from the gratuities of the State Law Class.

## PARTIES

12. Plaintiff Jacinda Gardner is a resident and citizen of Canton, Ohio who was employed by Defendant as a "Dancer" at its Myrtle Beach, South Carolina location from approximately March 2013 through June 2013. While employed by Defendant, Plaintiff was improperly classified as an independent contractor and, consequently, Defendant failed to compensate Plaintiff properly for all hours worked.

13. Plaintiff consents in writing to be Plaintiff in this action and will file an executed Consent To Sue form.

14. Defendant Galardi South Enterprises Consulting, Inc., d/b/a Masters Gentlemen's Club is a Georgia corporation having a principal place of business at 1730 N.E. Expressway, Suite 200, Atlanta, Georgia, 30329. Defendant employed Plaintiff as a Dancer.

15. Galardi South Enterprises Consulting, Inc. owns and operates Masters Gentlemen's Club ("Masters"), which offers adult entertainment services, including adult exotic dancing in the nature of live performances, at 1901 Mr. Joe White Ave., Myrtle Beach, South Carolina 29577.

16. At all relevant times Defendant has transacted business, including the employment of Dancers, within the state of South Carolina, including within this district.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 201, *et seq*.

18. This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed Rule 23 class consists of over 100 or more members; (ii) at least some of the members of the proposed class have a different citizenship from Defendant (Plaintiff Gardner is a citizen of Ohio; Defendant is a citizen of Georgia); and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

19. Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

21. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**FACTUAL ALLEGATIONS**

22. The crux of the FLSA and South Carolina state law is, *inter alia*: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; (ii) that all employees are entitled to premium overtime compensation for all hours worked in excess of forty hours a week; and (iii) that all gratuities earned by an employee are the property of the employee.

23.     Contrary to these basic protections, Defendant improperly classified its Dancers, including Plaintiff, as "independent contractors" despite Defendant's near total control over them. Consequently, Plaintiff and the members of the Classes (defined herein) were: (i) deprived of the mandated minimum wage for all hours they worked; (ii) deprived of premium overtime compensation for all hours worked in excess of forty per workweek; (iii) forced to improperly share a percentage of their gratuities with Defendant; and (iv) forced to reimburse Defendant for its ordinary business expenses.

24.     Plaintiff and the members of the FLSA Collective Class and State Law Class were Dancers employed by Defendant at its Masters Gentlemen's Club location in Myrtle Beach.

25.     Masters Gentlemen's Club is operated by Defendant under uniform policies applicable to all members of the Classes. Through these policies and procedures, Defendant maintains significant supervision and control over Plaintiff and members of Classes.

26.     Notwithstanding Defendant's classification of Dancers as independent contractors, as set forth below, due to the amount of control Defendant has over its Dancers, Dancers are legally Defendant's employees.

### Hiring, Firing, and Scheduling

27.     An individual wishing to perform at Masters can elect to be treated as either a "Freelancer" or "Entertainer." Typically, a "Freelancer" is a visiting dancer who typically works at another club.[1] In contrast, Defendant prohibits "Entertainers" (a/k/a Dancers) from working at any other club while performing at Defendant's location.

---

[1] Freelancers are required to pay higher house fees (described herein) and are not entitled to such perks as free drinks or a catered breakfast (for those dancers working the early shift).

6

28. Defendant has the power to hire and fire Dancers and has rules governing the conditions under which Dancers work.

29. Further, Dancers are required to check in with the podium host and "House Mom" as soon as they arrive for their shift. Indeed, there is a sign-in book that the House Mom keeps.

30. Dancers are required to work at least one Sunday or Monday shift per week, one "Happy Hour" shift per week (starting at 4:00 p.m.), and at least three additional shifts.

### House Fees & Fines

31. Rather than pay its Dancers the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendant classified its Dancers as independent contractors and required its Dancers to pay Defendant in order to work at Defendant's establishment. Consequently, Defendant does not compensate Dancers in an amount at least equal to the mandated minimum wage for each hour worked during their shifts.

32. Further, Defendant required its Dancers, including Plaintiff and members of the Classes, to pay "House Fees" for each shift that Dancers work. These fees are posted in the establishment, along with other fines described herein.

33. Typically, the House Fees range from $30 per shift to $150 per shift. If a Dancer is late for her scheduled shift, Defendant assesses late fees. Incredibly, even if a Dancer notifies management in advance that she will be late, fees will be enforced.

34. If a Dancer has any outstanding fees or fines, she will not be permitted to work until she pays them in full.

**Tip Retention & Mandatory Tip Outs**

35. It is black letter law that tips received by an employee are the employee's tips, and an employer has no ownership interest in said tips. Indeed, according to the DOL's Regulations, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA." 29 C.F.R. § 531.52.

36. Despite this plain fact, Defendant unlawfully retained a portion of tips Dancers received from Defendant's customers.

37. Moreover, Defendant also mandates the fees a Dancer may charge customers for her services, such as private performances.

38. For example, Defendant mandates a Dancer charge $25 for a "couch dance," of which Defendant takes $5; for a 15-minute private room dance, a Dancer must charge $175, of which Defendant takes $25; for a 30-minute private room dance, a Dancer must charge $350, of which Defendant takes $50; for a 60-minute private room dance, a Dancer must charge $600, of which Defendant takes $100.

39. As a result, customers who believe that they are paying or tipping Dancers a certain amount are actually paying them less, due to the aforementioned deductions taken by Defendant.

40. As set forth below, these deductions are in contravention of applicable law.

41. In addition, Defendant also subjects Dancers to mandatory tip-outs. That is, Dancers are required to tip certain of Defendant's employees. Importantly, the individuals that Defendant requires its Dancers to share their tips with do not provide customer service.

42. Upon information and belief, Defendant uses these tips paid by Dancers to offset its ordinary business expenses. Stated another way, Defendant requires Dancers to tip these

individuals so that Defendant can then reduce its labor costs by having the Dancers supplement the compensation Defendant pays its other employees.

43. The number of individuals Dancers are required to tip is numerous, and the tip amounts are significant. Defendant has a *mandatory* tip-out policy whereby Dancers must each tip a minimum of (i) $10 to the House Mom, (ii) $10 to the club's DJ, plus an additional 10% of the Dancer's earnings during the shift, (iii) $3 to the valet attendant, and (iv) $2 to the club employee responsible for supervising the private dance areas (the "Floor Host"). Accordingly, Dancers are required to tip Defendant's employees a significant amount for each shift worked.

44. As a result of the mandatory house fees and required tip-outs, Dancers sometimes receive little to no actual compensation despite hours of work. Indeed, after paying all fees, fines, and tip-outs, Plaintiff's take home compensation on several occasions was negative.

### **Additional Control**

45. Defendant requires Dancers to wear certain types of clothes from the moment they enter the club, including a "dancer's G-string," a dress, and certain shoes. The House Mom must approve the clothing before a Dancer is permitted to work. In addition, Defendant does not pay for the cost of laundering or maintaining these unique uniforms.

46. Dancers must be on the floor within thirty minutes of their arrival at the club.

47. Dancers are required to work rotations on the main stage of three songs per rotation. Dancers do not control the sequence, timing, or length of their rotations. Dancers must also perform on side stages and accept private dance requests from customers at the direction of management.

48. Dancers must also participate in "promo" work, such as selling Defendant's merchandise or alcoholic beverages to customers. Dancers do not keep all of the profits of their promo work and must return merchandise to Defendant or face a fine.

49. Dancers must also accept "G-Bucks" as a possible form of payment or tips from customers. G-Bucks are purchased from the club by customers at a premium over legal currency. The premium charged to customers is approximately 6–8%. Dancers must exchange G-Bucks into legal currency through Defendant at the end of their shift, at a discount. Currently, Defendant will only pay $90 U.S. for every 100 G-bucks turned in by a Dancer. Dancers must accept whatever exchange rate Defendant chooses to impose.

50. As a result, customers using G-Bucks who believe that they are paying or tipping Dancers a certain amount are actually paying them less, because Dancers do not receive a $1 U.S. for each G-Buck exchanged. Defendant profits at the expense of the Dancers by selling the G-Bucks to customers at a premium and redeeming them to Dancers at a discount.

51. Dancers are charged $3 for valet service and must park their car with the valet.

52. In short, Defendant maintains significant supervision and control over Plaintiff and members of Classes and sets the rules governing the conditions under which Dancers work.

53. Defendant has been unjustly enriched to the detriment of the Classes by: (i) requiring Dancers to pay money out of their tips to pay for the ordinary business expenses of Defendant; (ii) requiring Dancers to forfeit a portion of their tips to Defendant; (iii) paying Dancers less than the mandated minimum wage while failing to comply with the requirements for doing so; (v) failing to pay Dancers premium overtime compensation for all hours worked in excess of forty in a work week; and (vi) requiring Dancers to accept the G-Bucks artificial currency from customers but redeeming the G-Bucks from Dancers for less than $1/1 value.

54. At all times relevant to this Complaint, Plaintiff believed she was an employee of Defendant.

55. Evidence generally reflecting the number of uncompensated hours worked by Dancers is in the possession of Defendant.

56. While Plaintiff is unable to state at this time the exact amount owed to the Classes, Plaintiff believes that such information will become available during the course of discovery. Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony, and the burden of overcoming such testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## CLASS & COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff brings this action on behalf of the FLSA Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b). Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the State Law Class for claims under the SC State Laws.

58. The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b). The claims brought pursuant to the SC State Laws may be pursued by all similarly-situated persons who do not opt out of the State Law Class pursuant to Fed. R. Civ. P. 23.

59. Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over a hundred individuals in each of the Classes.

60. Defendant has acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole appropriate.

61. The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendant and were subject to the same compensation policies and practices, including not being compensated for all hours worked.

62. Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

   (a) whether Plaintiff and Dancers were improperly classified as independent contractors by Defendant;

   (b) whether Defendant has failed to pay minimum wages for each hour worked;

   (c) whether Plaintiff and Dancers were required to pay Defendant, in cash, fees for each shift worked;

   (d) whether Defendant improperly retained any portion of Plaintiff's and Dancers' tips;

   (e) whether Defendant has failed to pay overtime compensation for all hours worked in excess of forty per workweek;

   (f) whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

   (g) whether Plaintiff and members of the Classes are entitled to restitution; and

   (h) whether Defendant is liable for attorneys' fees and costs.

63. Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes. Plaintiff has no interests adverse to the Classes she seeks to represent, and she has retained competent and experienced counsel.

64. The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by

individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

65. Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice, and custom regarding Defendant's pay practices.

66. Defendant has acted willfully and has engaged in a continuing violation of the FLSA and SC State Laws.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
**(On Behalf of the FLSA Collective Class)**

67. Plaintiff, on behalf of herself and the FLSA Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

68. At all relevant times, Defendant has had gross revenues in excess of $500,000.

69. At all relevant times, Defendant has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

70. At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the FLSA Collective Class Members within the meaning of the FLSA.

71. Pursuant to Defendant's compensation policies, rather than pay Dancers the federally-mandated minimum wage, Defendant improperly classified Plaintiff and other Dancers as independent contractors.

72. As a result of the Defendant's willful practices, Defendant was not entitled to pay Plaintiff and the members of the FLSA Collective Class less than the mandated minimum wage for all hours worked.

73. Defendant has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq*. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

74. Due to Defendant's FLSA violations, Plaintiff, on behalf of herself and the members of the FLSA Collective Class, is entitled to recover from the Defendant compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## **SECOND CLAIM FOR RELIEF**
## **FAIR LABOR STANDARDS ACT OVERTIME WAGE VIOLATIONS**
**(On Behalf of the FLSA Collective Class)**

75. Plaintiff, on behalf of herself and the FLSA Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

76. At all relevant times, Defendant has had gross revenues in excess of $500,000.

77. At all relevant times, Defendant has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

78. At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the FLSA Collective Class Members within the meaning of the FLSA.

79. At relevant times in the period encompassed by this Complaint, Defendant had, and maintains, a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of forty hours per workweek due to Defendant's improper classification of Plaintiff and Dancers as independent contractors.

80. Defendant has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq*. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81. Due to Defendant's FLSA violations, Plaintiff, on behalf of herself and the members of the FLSA Collective Class, is entitled to recover from the Defendant compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

### THIRD CLAIM FOR RELIEF
### SOUTH CAROLINA PAYMENT OF WAGES ACT
(On Behalf of the State Law Class)

82. Plaintiff, on behalf of herself and the members of the State Law Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

83. At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the State Law Class Members within the meaning of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110 ("PWA"). Plaintiff and the State Law Class Members are "employees" and are not free from the control and direction of Defendant.

84. Plaintiff and the State Law Class Members worked for Defendant with the clear understanding and agreement by Defendant that their compensation would be consistent with all applicable laws, including federal and state wage and hour laws.

85. Pursuant to the PWA, "[a]n employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law . . . ." Accordingly, Plaintiff and the members of the State Law Class were entitled to receive all compensation due and owing to them.

86. As a result of Defendant's unlawful policies and practices, as set forth above, Plaintiff and the members of the State Law Class have been deprived of compensation due and owing, which Defendant promised to pay in its commitment to abide by applicable wage and

hour laws, and in violation of the PWA's mandate that no wages be withheld or diverted unless required or permitted under applicable law.

87.     Due to Defendant's policy of deducting amounts from the tips of Plaintiff and the State Law Class to offset business expenses, Plaintiff and the State Law Class were subject to improper deductions from their compensation. Specifically, Defendant unlawfully withheld and diverted monies from the compensation earned by Plaintiff and the State Law Class for business expenses of Defendant, including, but not limited to the cost of employing other workers, in direct violation of the PWA. Plaintiff and the State Law Class Members have not expressly and freely given written consent to such deductions, and these deductions were not made in response to a valid wage assignment or deduction order. Such deductions were not for the Plaintiff's and State Law Class Members' benefit.

88.     Defendant has set, reduced, withheld, and/or diverted the wages of Plaintiff and the State Law Class Members without providing advance notice of such amounts, and absent any lawfully sufficient reason for such conduct.

89.     As a direct and proximate result of Defendant's conduct, Plaintiff and the State Law Class have suffered substantial losses and have been deprived of compensation to which they are entitled, including monetary damages in the amount of three times the unpaid wages, as well as costs and reasonable attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**SOUTH CAROLINA COMMON LAW – UNJUST ENRICHMENT**
**(On Behalf of the State Law Class)**

90.     This Fourth Count is brought in the alternative to the Third Count (violation of the PWA), to the extent that Defendant disavows its agreement to pay Plaintiff and the State Law Class in a manner consistent with federal and state wage and hour laws or to the extent that any

16

alleged agreement between the parties is in violation of such laws, and therefore void. Plaintiff, on behalf of herself and the State Law Class Members, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

91. Plaintiff and the members of the State Law Class were employed by Defendant within the meaning of South Carolina common law.

92. At all relevant times, Defendant had, and maintains, a willful policy and practice of denying Dancers their full share of gratuities.

93. During the class period covered by this Complaint, Defendant had, and maintains, a willful policy and practice of having Dancers subsidize Defendant's business expenses by requiring Dancers to pay or "tip" certain individuals a required minimum amount.

94. Plaintiff and Dancers were subjected to unlawful deductions from their gratuities.

95. Defendant retained the benefits of its unlawful deductions from the gratuities of Plaintiff and Dancers under circumstances that rendered it inequitable and unjust for Defendant to retain such benefits.

96. Defendant was unjustly enriched by subjecting Plaintiff and Dancers to such unlawful deductions.

97. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the members of the State Law Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendant of the benefits conferred by Plaintiff and the State Law Class.

98. Plaintiff, on behalf of herself and the members of the State Law Class, is entitled to reimbursement, restitution, and disgorgement of monies received by Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the FLSA Collective Class and members of the State Law Class, prays that the Court grant the following relief:

A. Designation of this action as a collective action on behalf of the FLSA Class and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) apprising class members of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

B. Designation of this action as a class action under Fed. R. Civ. P. 23 on behalf of the State Law Class;

C. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the PWA;

D. An injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

E. An award of unpaid minimum wages to Plaintiff and the members of the Classes;

F. An award of unpaid overtime wages to Plaintiff and the members of the Classes;

G. Restitution of wages and gratuities improperly retained by Defendant;

H. An award of liquidated damages to Plaintiff and members of the Classes;

I. An award of treble damages to Plaintiff and members of the Classes to the extent permitted by S.C. Code Ann. § 41-10-80(C);

J. An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

K. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Date:  December 4, 2013

Respectfully submitted,

/s/ James L. Ward, Jr.
James L. Ward, Jr., Fed. ID No. 6956
**RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC**
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
Tel: 843-727-6682
Fax: 843-216-6509
jward@rpwb.com

Gary F. Lynch
R. Bruce Carlson
Jamisen A. Etzel
**CARLSON LYNCH LTD**
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Tel: 412-322-9243
Fax: 412-231-0246

Benjamin J. Sweet
Edwin J. Kilpela, Jr.
**DEL SOLE CAVANAUGH STROYD LLC**
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Tel: (412) 261-2393
Fax: (412) 261-2110

*Attorneys for Plaintiff*